# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| GLORIA YOUNG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONE SOURCE MEDICAL GROUP, LLC,<br><br>Defendant. | Civil Action No. 8:26-cv-00716<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Gloria Young ("Plaintiff") brings this Class Action Complaint on behalf of herself, and all others similarly situated, against Defendant One Source Medical Group, LLC ("One Source Medical" or "Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to her, which are based on personal knowledge:

## NATURE OF THE CASE

1.     Plaintiff brings this class action against One Source Medical for its failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' ("Class Members") sensitive personally identifying information ("PII") and protected health information ("PHI"), including names, insurance information, healthcare information, and billing and financial information (collectively "Private Information").

2.      One Source Medical Group, LLC is a medical supply partner that provides complete medical supply solutions across diabetes care, enteral nutrition, and incontinence products.[1]

3.      Plaintiff and Class Members are required to provide Defendant with their Private Information in order to receive their diabetes care, enteral nutrition, and incontinence products. Because of this, One Source Medical has a duty to secure, maintain, protect, and safeguard the Private Information that it collects and stores against unauthorized access and disclosure through reasonable and adequate data security measures.

4.      Despite One Source Medical's duty to safeguard the Private Information of its current and previous patients, Plaintiff's and Class Members' Private Information was compromised in a data breach when, on or about March 7, 2026, the ransomware group, Genesis, gained unauthorized access to Defendant's computer systems (the "Data Breach").

5.      The Data Breach occurred in part because One Source Medical stored Plaintiff's and Class Members' Private Information in an unencrypted, Internet-accessible environment.

6.      Despite Genesis listing One Source Medical on its dark web leak site, Defendant has yet to notify impacted individuals of the unauthorized access.

7.      Based on information and belief, the Private Information impacted by the Data Breach includes a wide swath of highly sensitive information belonging to

---

[1] One Source Medical Group, https://onesourcemg.com (last visited March 17, 2026).

2

One Source Medical's current and former patients including names, insurance information, healthcare information, and billing and financial information.

8. As a direct and proximate result of Defendant's failure to implement and follow basic security procedures, Plaintiff's and Class Members' Private Information is now exposed to cybercriminals.

9. Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, intrusion of their health privacy, and similar forms of criminal mischief, risks which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

10. Plaintiff, on behalf of herself and all others similarly situated, alleges claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment and declaratory judgment arising from the Data Breach. Plaintiff seeks damages and injunctive relief, including the adoption reasonably sufficient practices to safeguard the Private Information in Defendant's custody to prevent incidents like the Data Breach from reoccurring in the future, and for Defendant to provide identity theft protective services to Plaintiff and Class Members for their lifetimes.

**PARTIES**

11. Plaintiff Gloria Young is an adult, who at all relevant times, was a resident and citizen of the state of Florida. Plaintiff has previously received medical

3

supplies from Defendant and upon information and belief, reasonably believes her Private Information was compromised during the Data Breach.

12.    Plaintiff has suffered actual injury from having her Private Information exposed and/or stolen as a result of the Data Breach, including: (a) required mitigation efforts, including researching the Data Breach and needing to monitor her financial statements to ensure her information is not used for identity theft and fraud; (b) damages to and diminution of the value of her Private Information, a form of intangible property that loses value when it falls into the hands of criminals; (c) loss of privacy; and (d) continuous imminent and impending injury raising from increased risk of financial identity theft and fraud.

13.    As a direct and proximate result of the Data Breach, Plaintiff has also received a significant increase in spam calls since the Data Breach. Plaintiff noticed that this was a considerable increase from the amount of spam calls she received before the Data Breach.

14.    As a result of the Data Breach, Plaintiff will continue to be at a substantial and certainly impending risk for fraud and identity theft, and their attendant damages, for years to come.

15.    Defendant One Source Medical Group, LLC is a Florida limited liability company with its principal executive office located at 13910 Lynmar Blvd, Tampa, FL 33626.[2]

---

[2] Under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(10), an unincorporated entity such as an LLC is deemed to be a citizen of the State where its principal place of business is located and

**JURISDICTION AND VENUE**

16.　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendant.

17.　This Court has personal jurisdiction over Defendant because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

18.　Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

**FACTUAL BACKGROUND**

19.　Defendant is a medical supply partner that provides personalized, compassionate healthcare that prioritizes patient advocacy and individual needs.[3]

20.　Plaintiff and Class Members are and/or were patients of Defendant.

---

the State under whose laws it is organized. *See Griggs v. NHS Mgmt. LLC*, No. 2:22-CV-00565-RDP, 2023 WL 4190535, at *3 (N.D. Ala. June 26, 2023).

[3] *About Us*, One Source Medical Group, https://onesourcemg.com/about (last visited March 17, 2026).

21. As a condition of obtaining services from Defendant, Plaintiff and Class Members directly or indirectly entrusted One Source Medical with their sensitive Private Information.

22. Plaintiff and Class Members value the confidentiality of their Private Information and, accordingly, have taken reasonable steps to maintain the confidentiality of their Private Information.

23. In turning over their Private Information, Plaintiff and Class Members reasonably expected that their provider would safeguard their highly sensitive information.

24. By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, One Source Medical assumed equitable and legal duties to safeguard Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

25. Despite these duties, One Source Medical failed to implement reasonable data security measures to protect Plaintiff's and Class Members' Private Information and ultimately allowed threat actors to breach its computer systems and exfiltrate Plaintiff's and Class Members' Private Information.

**THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE**

26. One Source Medical understood that the Private Information it collects was highly sensitive and of significant value to those who would use it for wrongful purposes.

6

27.    One Source Medical also knew that a breach of its computer systems, and exposure of the Private Information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

28.    These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, and many others.

29.    Private Information has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data as there has been "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[4]

30.    As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[5]

31.    The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the U.S. In 2021, there were 6,670 publicly disclosed data breaches, exposing 16.8 billion records. The

---

[4] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.
[5] *What To Know About Identity Theft, FTC Consumer Advice* (Sept. 2024), https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft.

United States specifically saw a 12% increase in the total number of data breaches as compared to 2023.[6]

32.    In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2024, 3.73 million people reported some form of identity theft and/or fraud.[7]

33.    The healthcare industry, specifically, has become a prime target for threat actors: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[8] Indeed, "[t]he IT environments of healthcare organizations are often complex and difficult to secure. Devices and software continue to be used that have reached end-of-life, as upgrading is costly and often problematic. Many healthcare providers use software solutions that have been developed to work on specific—and now obsolete—operating systems and cannot be transferred to supported operating systems."[9]

34.    PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

---

[6] *Flashpoint 2025 Global Threat Intelligence Report*, https://flashpoint.io/resources/report/flashpoint-2025-global-threat-intelligence-gtir/ (last visited March 17, 2026).

[7] *Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20 Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited March 17, 2026).

[8] *The Healthcare Industry is at Risk*, SwivelSecure, https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited Mar. 11, 2025).

[9] Steve Alder, Editorial: *Why Do Criminals Target Medical Records*, HIPAA Journal (Oct. 14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records/#:~:text= Medical%20records%20contain%20highly%20sensitive,used%20for%20extortion%20and%20b lackmail.

Cybercriminals seek out PHI at a greater rate than other sources of personal information. Between 2009 and 2026, 7,357 healthcare data breaches of 500 or more individuals have been reported to Health and Human Services' Office of Civil Rights, resulting in the exposure or unauthorized disclosure of the information of 935,521,931 individuals—a whopping number which "equates to more than 2.6x the population of the United States."[10]

35.    The ramifications of One Source Medical's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

36.    Even if stolen Private Information does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these

---

[10] *Healthcare Data Breach Statistics*, HIPAA Journal, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited March 17, 2026).
[11] *Report to Congressional Requesters, Personal Information, June 2007*, U.S. Gov't Accountability Office, https://www.gao.gov/new.items/d07737.pdf, (last visited March 17, 2026).

forms of attack, the criminal uses the previously obtained Private Information about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

37. The specific types of personal data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and other Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

38. PHI is particularly valuable and has been referred to as a "treasure trove for criminals." [12] As indicated by Jim Trainor, former second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI records can go from $20 say up to—we've even seen $60 or $70."[13] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market, whereas stolen payment card information sells for about $1.[14]

---

[12] *See* Andrew Steger, *What Happens to Stolen Healthcare Data?*, HEALTHTECH MAGAZINE (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.").

[13] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data*, *New Ponemon Study Shows*, IDX (May 14, 2015), https://www.idexpertscorp.com/knowledge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[14] *Managing cyber risks in an interconnected world, Key findings from The Global State of Information Security® Survey 2015*, PriceWaterhouseCoopers, https://www.pwc.com

39.     According to Experian:

Having your records stolen in a healthcare data breach can be a prescription for financial disaster. If scam artists break into healthcare networks and grab your medical information, they can impersonate you to get medical services, use your data open credit accounts, break into your bank accounts, obtain drugs illegally, and even blackmail you with sensitive personal details.

ID theft victims often have to spend money to fix problems related to having their data stolen, which averages $600 according to the FTC. But security research firm Ponemon Institute found that healthcare identity theft victims spend nearly $13,500 dealing with their hassles, which can include the cost of paying off fraudulent medical bills.

Victims of healthcare data breaches may also find themselves being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores. In the worst cases, they've been threatened with losing custody of their children, been charged with drug trafficking, found it hard to get hired for a job, or even been fired by their employers.[15]

40.     **Health Insurance Information**—"stolen personal health insurance information can be used by criminals to obtain expensive medical services, devices and prescription medications, as well as to fraudulently acquire government benefits like Medicare or Medicaid."[16]

---

/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf (last visited March 17, 2026).

[15] Brian O'Connor, *Healthcare Data Breach: What to Know About them and What to Do After One*, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[16] Kate O'Flaherty, *Why cyber-Criminals Are Attacking Healthcare -- And How to Stop Them*, Forbes (Oct. 5, 2018), https://www.forbes.com/sites/kateoflahertyuk/2018/10/05/why-cyber-criminals-are-attacking-healthcare-and-how-to-stop-them/?sh=54e8ed1e7f69.

41.     In fact, there are even guides, tutorials, and documentation available on the dark web to assist novice cybercriminals in conducting health insurance fraud.[17]

42.     This type of fraud, known as medical identity theft, can be hard to spot and even harder to recover from—"[t]he average person may have no idea a problem like this can arise until long after a theft occurs."[18]

43.     As Eva Velasquez, president and CEO of the Identity Theft Resource Center, explains, a "majority of victims find out when they're trying to move on with their lives, if bills have gone to collections."[19] Additionally, as cybersecurity experts at the American Hospital Association have noted:

> [T]he personal information in people's medical records may be sold in bulk to criminals who create phony providers to submit fraudulent claims on a mass scale that can result in hundreds of millions of dollars in Medicaid, Medicare, or other insurance fraud. Or they may use the information to create fake identities to apply for loans, mortgages, or credit cards.[20]

44.     Medical identity theft causes tens of billions of dollars in losses annually.[21]

45.     Based on the value to cybercriminals of the customer Private Information in its possession, One Source Medical knew or should have known the

---

[17] *Unveiling Insurance Fraud on the Dark Web*, Dark Owl (Apr. 25, 2024), https://www.darkowl.com/blog-content/unveiling-insurance-fraud-on-the-dark-web/.

[18] Michelle Andrews, *Someone Could Steal Your Medical Records and Bill You for Their Care*, NPR (July 26, 2023), https://www.npr.org/sections/health-shots/2023/07/26/1189831369/medical-identity-fraud-protect-yourself.

[19] *Id.*

[20] *Id.*

[21] *Health Care Fraud*, FBI, https://www.fbi.gov/investigate/white-collar-crime/health-care-fraud (last visited March 17, 2026).

importance of safeguarding the Private Information entrusted to it and of the foreseeable consequences if its data security systems were breached. One Source Medical failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

**ONE SOURCE MEDICAL BREACHED ITS DUTY TO PROTECT PATIENTS' PRIVATE INFORMATION**

46.    On or about March 7, 2026, One Source Medical experienced a cybersecurity event.

47.    Upon information and belief, during the Data Breach, ransomware group, Genesis, gained access to Defendant's systems without authorization and obtained certain personal information of current and former patients of One Source Medical.

48.    The customer information compromised during the Data Breach includes, at the very least, personal information provided to One Source Medical, including names, insurance information, healthcare information, and billing and financial information.

49.    The Data Breach was an intentional attack directed at accessing Defendant's computer systems to gain access to Plaintiff's and Class Member's Private Information stored therein. The actors responsible for the Data Breach were responsible in their endeavors having listed One Source Medical on their dark web leak site and further threatening to publish the stolen Private Information if their ransom demands are not met.

13

50.     As set forth below, despite this threat, and other known threats, upon information and belief, One Source Medical failed to take any action to increase security of the Private Information it held and knew to be highly valuable to cybercriminals.

51.     The Data Breach occurred as a direct result of One Source Medical's failure to implement and follow basic security procedures to protect its current and former patients' Private Information that it had collected and stored.

**ONE SOURCE MEDICAL FAILED TO COMPLY WITH FTC GUIDELINES AND INDUSTRY BEST PRACTICES**

52.     One Source Medical is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

53.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[22]

---

[22] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

54. Among other guidance, the FTC recommends the following cybersecurity guidelines for businesses in order to protect sensitive information in their systems: [23]

    a. Identify all connections to the computers where sensitive information is stored;

    b. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

    c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

    d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

    e. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

    f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

    g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to

---

[23] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited March 17, 2026).

15

access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h.  Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i.  Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

55.  The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[24]

56.  The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[24] *Id.*

57.     One Source Medical failed to properly implement basic data security practices. One Source Medical's failure to employ reasonable and appropriate measures to protect against unauthorized access to its patients' Private Information constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

58.     Similarly, the U.S. Government's National Institute of Standards and Technology ("NIST") provides a comprehensive cybersecurity framework that companies of any size can use to evaluate and improve their information security controls.[25]

59.     NIST publications include substantive recommendations and procedural guidance pertaining to a broad set of cybersecurity topics including risk assessments, risk management strategies, access controls, training, data security controls, network monitoring, breach detection, and incident response.[26] Upon information and belief, Defendants failed to adhere to the NIST guidance.

60.     Further, cybersecurity experts have identified various best practices that should be implemented by entities in the healthcare sector, including implementing the following measures to defend against common cyberattacks:

     a.      Email protection systems and controls;

     b.      Endpoint protection systems;

---

[25] *See Framework for Improving Critical Infrastructure Cybersecurity*, National Institute of Standards & Technology (Apr. 16, 2018), App'x A, Table 2, available at https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf.
[26] *Id.* at Table 2, 26-43.

c.    Identify all users and audit their access to data, application, systems, and endpoints;

d.    Data protection and loss prevention measures;

e.    IT asset management;

f.    Network management;

g.    Vulnerability management;

h.    Security operations center & incident response; and

i.    Cybersecurity oversight and governance policies, procedures, and processes.[27]

61.    Upon information and belief, Defendant's failure to protect the Private Information it was entrusted is a result of its failure to adopt reasonable safeguards as required by the FTC Guidelines, NIST guidance, and industry best practices.

62.    One Source Medical was at all times fully aware of its obligations to protect the Private Information of its patients given the reams of Private Information that it had access to as Plaintiff's and the Class Members' provider. One Source Medical was also aware of the significant repercussions that would result from a failure to properly secure the Private Information it maintained.

**ONE SOURCE MEDICAL FAILED TO COMPLY WITH HIPAA'S MANDATES**

63.    Defendant is a business associate under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45

---

[27] *HICP's 10 Mitigating Practices*, HHS, https://405d.hhs.gov/best-practices (last visited March 17, 2026).

18

C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

64. In addition, One Source Medical is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

65. HIPAA's Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information, while HIPAA's Security Standards for the Protection of Electronic Protected Health Information establishes national security standards for health information that is stored or transmitted electronically.

66. HIPAA requires "comply[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302. Such health information includes "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

67. HIPAA's Security Rule requires entities such as One Source Medical to, *inter alia*, do the following: (i) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or

business associate creates, receives, maintains, or transmits; (ii) protect against any reasonably anticipated threats or hazards to the security or integrity of such information; (iii) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (iv) ensure compliance by its workforce.

68.    HIPAA also requires entities such as One Source Medical to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, One Source Medical is required under HIPAA to "[i]implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

69.    Moreover, both HIPAA and HITECH required One Source Medical to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

70.    Finally, HIPAA requires an entity to provide notice of a data breach to affected individuals "without unreasonable delay and in no case later than 60 days following discovery of the breach." 45 C.F.R. §§ 164.400-414.

71.     The Department of Health and Human Services Office for Civil Rights recommends the following data security measures that covered entities and business associates like Defendant should implement to protect against some of the more common, and often successful, cyber-attack techniques:

a.     Regulated entities should implement security awareness and training for all workforce members and that the training programs should be ongoing, and evolving to be flexible to educate the workforce on new and current cybersecurity treats and how to respond;

b.     Regulated entities should implement technologies that examine and verify that received emails do not originate from known malicious site, scan web links or attachments included in emails for potential threats, and impeded or deny the introduction of malware that may attempt to access PHI;

c.     Regulated entities should mitigate known data security vulnerabilities by patching or upgrading vulnerable technology infrastructure, by upgrading or replacing obsolete and/or unsupported applications and devices, or by implementing safeguards to mitigate known vulnerabilities until an upgrade or replacement can occur;

d.     Regulated entities should implement security management processes to prevent, detect, contain, and correct security violations, including conducting risk assessments to identify potential risks and vulnerabilities to the confidentiality, integrity, and availability of PHI; and

e.     Regulated entities should implement strong cyber security practices by requiring strong passwords rules and multifactor identification.[28]

---

[28] *OCR Quarter 1 2022 Cybersecurity Newsletter*, U.S. Dep't Health & Human Services, (Mar. 17, 2022), https://www.hhs.gov/hipaa/for-professionals/security/guidance/cybersecurity-newsletter-first-quarter-2022/index.html.

72.     One Source Medical was, at all times, aware of the mandates of HIPAA. Despite being aware of these mandates and its concomitant obligations, One Source Medical failed to comply with its obligations and protect the PHI of Plaintiff and the Class Members.

73.     Defendant's failure in this regard is especially egregious given that Defendant was fully aware of the breadth and depth of PHI it obtained and stored and the foreseeable consequences that would result from unauthorized disclosure of this information.

**PLAINTIFF AND CLASS MEMBERS SUFFERED DAMAGES**

74.     The ramifications of One Source Medical's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

75.     Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives as a result of Defendant's conduct. Further, the value of Plaintiff's and Class Members' Private Information has been diminished by its exposure in the Data Breach.

76.     Private Information remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be

sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[29] "Fullz" packages, which includes "extra information about the legitimate credit card owner in case" the scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[30]

77.    Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information as a result of the Data Breach. From a study, 28% of individuals affected by a data breach become victims of identity fraud—this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[31]

78.    Further, Plaintiff and Class Members have incurred and will incur out of pocket costs for protective measures, such as identity theft protection, credit monitoring, credit report fees, credit freeze fees, and similar costs related to the Data Breach.

79.    Besides the monetary damage sustained in the event of identity theft, consumers may have to spend hours trying to resolve identity theft issues. For example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.[32]

---

[29] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/.
[30] *Id.*
[31] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KnowBe4, https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last visited March 17, 2026).
[32] Kathryn Parkman, *How to Report identity Theft*, ConsumerAffairs (Feb. 17, 2022), https://www.consumeraffairs.com/finance/how-to-report-identity-theft.html.

80.    Plaintiff and Class Members are also at a continued risk because their information remains in One Source Medical's systems, which the Data Breach showed are susceptible to compromise and attack and are subject to further attack so long as One Source Medical fails to take necessary and appropriate security and training measures to protect the Private Information in its possession.

81.    Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

82.    As a result of One Source Medical's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including out of pocket expenses; loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their Private Information; and continued risk to Plaintiff's and the Class Members' Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as One Source Medical fails to undertake appropriate and adequate measures to protect the Private Information entrusted to it.

## CLASS ALLEGATIONS

83.    Plaintiff brings this class action on behalf of herself and all other individuals who are similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

84.    Plaintiff seeks to represent a class of persons to be defined as follows:

> All individuals in the United States whose Private Information was compromised in the Data Breach (the "Class").

85.    Excluded from the Class are One Source Medical, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

86.    This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when she moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

87.    **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breach.

88. **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

    a.    Whether Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

    b.    Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' Private Information, and breached its duties thereby;

    c.    Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

    d.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

89. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class were all patients of Defendant, and each had their Private Information exposed and/or accessed by an unauthorized third-party.

90. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

The claims of Plaintiff and the Class Members are substantially identical as explained above.

91.   **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

92.   **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiff and each member of the Class. If Defendant breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

93.   **Injunctive Relief:** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

94.    **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

95.    Plaintiff re-alleges the allegations set forth in paragraphs 1–94 as if fully set forth herein.

96.    Defendant's patients, including Plaintiff and Class Members, provided their non-public Private Information to Defendant as a condition of obtaining services from Defendant.

97.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in securing, safeguarding, storing, and protecting the Private Information it collected from them as a condition of obtaining services from One Source Medical from being compromised, lost, stolen, accessed and misused by unauthorized parties. This duty includes, among other things, designing, maintaining, overseeing, and testing Defendant's security systems to ensure that the Private Information in One Source Medical's possession was adequately secured and protected.

98.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

28

99. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

100. Defendant owed a duty of care to Plaintiff and Class Members to provide reasonable security, consistent with industry standards, to ensure that its systems and networks adequately protected their Private Information.

101. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust One Source Medical with their Private Information as a condition of obtaining services was predicated on the understanding that One Source Medical would take adequate security precautions to protect their Private Information.

102. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

103. Plaintiff and members of the Class entrusted Defendant with their Private Information with the understanding that One Source Medical would safeguard their information.

104. Defendant's conduct also created a foreseeable risk of harm to Plaintiff and Class Members by failing to: (1) secure its systems and exercise adequate oversight of its data security protocols; (2) ensure compliance with industry standard data security practices, (3) implement adequate system and

29

event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent the Data Breach.

105. Defendant knew, or should have known of, the risks inherent in collecting and storing Private Information, the vulnerabilities of its systems, and the importance of adequate security. Defendant should have been aware of numerous, well-publicized data breaches in the months and years preceding the Data Breach.

106. Defendant breached its common law duty to act with reasonable care in collecting and storing the Private Information of its patients, which exists independently from any contractual obligations between the parties. Specifically, Defendant breached its common law, statutory, and other duties to Plaintiff and Class Members in numerous ways, including by:

    a. failing to adopt reasonable data security measures, practices, and protocols;

    b. failing to implement data security systems, practices, and protocols sufficient to protect Plaintiff's and Class Members' Private Information;

    c. storing current and former patients" Private Information longer than reasonably necessary;

    d. failing to comply with industry-standard data security measures; and

    e. failing to timely disclose critical information regarding the nature of the Data Breach.

107.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

108.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have and will suffer damages including, but not limited to: (i) the loss of value of their Private Information and loss of opportunity to determine for themselves how their Private Information is used; (ii) the publication and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as One Source Medical fails to undertake appropriate and adequate measures to protect it; and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised for the rest of their lives.

109. But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

110. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

111. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

112. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are therefore entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE *PER SE*
## (On Behalf of Plaintiff and the Class)

113. Plaintiff re-alleges the allegations set forth in paragraphs 1–94 as if fully set forth herein.

114. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Defendant or failing to use reasonable measures to protect Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

115. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of a data breach involving the Private Information it obtained when providing its services.

116. Plaintiff and Class Members are within the class of persons that Section 5 of the FTC Act is intended to protect.

117. Moreover, the harm that has occurred is the type of harm that Section 5 of FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

118. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

119. Furthermore, Defendant is subject to HIPAA, which sets minimum federal standards for privacy and security of PHI. Pursuant to HIPAA, 42 U.S.C. § 1302d, *et. seq.*, and its implementing regulations, Defendant had a duty to implement and maintain reasonable and appropriate administrative, technical, and physical safeguards to protect Plaintiff's and the Class Members' electronic PHI.

120. Specifically, HIPAA required Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 C.F.R. § 164.102, *et. seq.*

121. HIPAA also requires Defendant to provide Plaintiff and Class Members with notice of any breach of their individually identifiable PHI "without unreasonable delay and in no case later than 60 calendar days after discovery of the breach." 45 C.F.R. §§ 164.400-414.

122. Defendant violated HIPAA by disclosing Plaintiff's and the Class Members' electronic PHI; by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class

Members' PHI; and by failing to provide Plaintiff and Class Members with notification of the Data Breach without unreasonable delay after its discovery.

123. Plaintiff and the Class Members are patients within the class of persons HIPAA was intended to protect.

124. Moreover, the harm that has occurred is the type of harm that the HIPAA was intended to guard against.

125. Defendant's violation of HIPAA constitutes negligence *per se*.

126. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered injuries, including those identified above.

127. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**COUNT III**
**<u>BREACH OF IMPLIED CONTRACT</u>**
**(On Behalf of Plaintiff and the Class)**

128. Plaintiff re-alleges the allegations set forth in paragraphs 1-94 as if fully set forth herein.

129. In connection with obtaining services from Defendant, Plaintiff and Class Members entered into implied contracts with One Source Medical.

130. Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining services from Defendant.

131.    Defendant solicited, offered, and invited Class Members to provide their Private Information in order to obtain Defendant's services. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

132.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

133.    When Plaintiff and Class Members provided their Private Information to One Source Medical, either directly or indirectly, as a pre-condition for obtaining services, they entered into implied contracts with One Source Medical.

134.    Pursuant to these implied contracts, in exchange for the consideration and Private Information provided by Plaintiff and Class Members, Defendant agreed to, among other things, and Plaintiff and Class Members understood that One Source Medical would: (1) provide products and/or services to Plaintiff and Class Members; (2) implement reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Private Information; and (3) protect Plaintiff's and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

135.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

36

136.   Implicit in the agreement between Plaintiff and Class Members and Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

137.   The protection of Private Information was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand. Indeed, as set forth herein, Defendant recognized its duty to provide adequate data security and ensure the privacy of its patients' Private Information with its practice of providing a privacy policy on its website.

138.   Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendant with their Private Information.

139.   Defendant breached its obligations under its implied contracts with Plaintiff and Class Members in failing to implement and maintain reasonable security measures to protect and secure their Private Information, and in failing to implement and maintain security protocols and procedures to protect Plaintiff's

37

and Class Members' Private Information in a manner that complies with applicable laws, regulations, and industry standards.

140. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

141. On information and belief, at all relevant times, Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

142. On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

143. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

144. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

145. Importantly, Florida law provides that every contract includes good faith and fair dealing between the parties involved.

146. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

147. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach.

148. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

149. Defendant's breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach and the injuries that Plaintiff and Class Members have suffered from the Data Breach.

150. Plaintiff and Class Member suffered by virtue of Defendant's breach of their implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft - risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Private Information was improperly disclosed

to unauthorized individuals; (iv) the confidentiality of their Private Information has been breached; (v) they were deprived of the value of their Private Information, for which there is a well-established national and international market; (vi) they have lost time and incurred expenses, and will incur future costs to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) they have overpaid for the services they received without adequate data security.

151.    As a direct and proximate cause of Defendant's breach of contract, Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

152.    Plaintiff re-alleges the allegations set forth in paragraphs 1-94 as if fully set forth herein.

153.    This count is plead in the alternative to the breach of implied contract count above.

154.    By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

155.    Plaintiff and Class Members conferred a benefit on Defendant, whereby they provided their Private Information to Defendant to obtain services.

156. Defendant prior to and at the time Plaintiff and Class Members entrusted it with their Private Information, caused Plaintiff and Class Members to reasonably believe that it would keep that Private Information secure.

157. The monies Defendant was paid in its ordinary course of business included a premium for Defendant's cybersecurity obligations and were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class Members' Private Information.

158. Defendant knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

159. Defendant failed to disclose facts pertaining to its substandard information systems, or defects and vulnerabilities therein before Plaintiff and Class Members made their decisions to provide Defendant with their Private Information.

160. Defendant enriched itself by hoarding the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheap, ineffective security

measures and diverting those funds to its own personal use. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

161. Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result, Defendant was overpaid.

162. Under principles of equity and good conscience, Defendant should not be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

163. Plaintiff and Class Members have no adequate remedy at law.

164. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

165. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

**COUNT V**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

166. Plaintiff re-alleges the allegations set forth in paragraphs 1-94 as if fully set forth herein.

167. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

168. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' Private Information and whether One Source Medical is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information. Plaintiff alleges that One Source Medical's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as

43

a result of the compromise of her Private Information and remains at imminent risk that further compromises of her Private Information will occur in the future.

169. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. One Source Medical owes a legal duty to secure patients' Private Information and to timely notify impacted individuals of a data breach under the common law, Section 5 of the FTC Act, and HIPAA;

b. One Source Medical continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession; and

c. Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

170. This Court also should issue corresponding prospective injunctive relief requiring One Source Medical to employ adequate security protocols consistent with law and industry standards to protect Private Information in One Source Medical's data network.

171. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at One Source Medical. The risk of another such breach is real, immediate, and substantial. If another breach at One Source Medical occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily

quantified, and she will be forced to bring multiple lawsuits to rectify the same conduct.

172. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to One Source Medical if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to One Source Medical of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and One Source Medical has a pre-existing legal obligation to employ such measures.

173. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at One Source Medical, thus eliminating the additional injuries that would result to Plaintiff and patients whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order certifying this action as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative for the Class, and appointing her counsel to represent the Class;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For equitable relief enjoining One Source Medical from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or

disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

D.     For equitable relief compelling One Source Medical to utilize appropriate methods and policies with respect to customer data collection, storage, and safety, and to disclose with specificity the types of Private Information compromised as a result of the Data Breach;

E.     For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of One Source Medical's wrongful conduct;

F.     For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.     For an award of punitive damages, as allowable by law;

H.     For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.     Pre- and post-judgment interest on any amounts awarded; and

J.     Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 18, 2026                    Respectfully submitted,

**LYNCH CARPENTER, LLP**

<u>*/s/ Nicholas A. Colella*</u>
Nicholas A. Colella (FBN 1002941)
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
T: 412-322-9243
nickc@lcllp.com

***Attorneys for Plaintiff and the
Proposed Class***